**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
LEWIS A. STEWART               )
                               )
        Plaintiff,             )
                               )
     v.                        )    Civil Action No. 01-1756 (EGS)
                               )
MICHAEL GAINES, et al.,        )
CHAIRPERSON, UNITED STATES     )
PAROLE COMMISSION              )
                               )
        Defendants.            )
_____)
```

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff Lewis Stewart, a former inmate at the District of Columbia Department of Corrections Central Facility in Lorton, Virginia, brings this 42 U.S.C. § 1983 action against defendants Michael Gaines, former Chairman of the United States Parole Commission (the "Commission"), and Dennis Harrison, former Warden of the Lorton facility. Stewart's claims arise out of defendants' failure to provide timely preliminary and parole revocation hearings following his September 11, 2000 arrest, which resulted in the Commission's failure to consider plaintiff for a discretionary early release program. Pending before the Court are Defendant Gaines' Motion to Dismiss Plaintiff's First Amended Complaint or Alternatively, for Summary Judgment, and

Defendant Harrison's Motion to Dismiss.  Because plaintiff cannot identify a continuing constitutional injury resulting from defendants' conduct, defendants' motions will be **GRANTED** and plaintiff's Amended Complaint will be **DISMISSED WITH PREJUDICE.**

## II.  BACKGROUND

On July 31, 2000, the District of Columbia Parole Board (the "Board") issued a warrant for the arrest of plaintiff Lewis A. Stewart for violating the conditions of his parole, namely for failing to make contact with his probation officer over a period of several months.  Plaintiff was arrested in North Carolina pursuant to the warrant on September 11, 2000.  However, on August 5, 2000--between the issuance of Stewart's warrant and his arrest--the United States Parole Commission assumed the powers, duties and jurisdiction of the D.C. Parole Board, including responsibility for Mr. Stewart's outstanding parole warrant.  *See* National Capitol Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231.  The state of affairs in the District's correctional facilities during this period is well-documented.  By its own admission, the Commission was "overwhelmed" by its assumed responsibility for D.C. parole matters and its operations "reached a state of collapse."  *See, e.g., Long v. Gaines*, 167 F. Supp. 2d 75, 80 (D.D.C. 2001)("*Long I*").  The Commission faced a "litany of issues," including "over 200 overdue revocation hearings; over 100 backlogged and overdue

arrest warrants; and, over 300 late initial and re-hearings."[1] *Id.* In an effort to reduce this backlog, the Commission decided to evaluate prisoners who were incarcerated for technical parole violations and had not yet been provided with preliminary interviews or final parole revocation hearings.  This review led to a one-time, discretionary release in November 2000 of approximately 118 D.C. prisoners.  *See* Harrison Opp'n at 2.

In October 2000, during this period of apparent chaos, plaintiff was transferred from North Carolina to a D.C. prison facility without having received a local preliminary hearing on probable cause for parole revocation.  Moreover, the Commission did not become "aware" that plaintiff had been taken into custody in North Carolina, and subsequently transferred to D.C., until

---

[1] These conditions led to a class action lawsuit before this Court, of which plaintiff was a member.  *See Long I*, 167 F. Supp. 2d at 87.  In evaluating plaintiffs' § 1983 claims in that case, this Court found that

> [n]otwithstanding the Commission's excuses regarding the cause of its deficient performance, the record is replete with compelling, competent and uncontroverted evidence illustrating a pervasive pattern of undue delays.  Indeed ... the Commission's actions have directly resulted in the continuing violations of parolees' constitutional rights, violations that the record has illustrated have been continuous in nature, continue to this day, and will undoubtedly continue into the future unless this Court takes appropriate corrective action.

*Id.* at 92.  Following this Court's opinion, the parties entered into a comprehensive consent decree which involved sweeping changes to the Commission's policies and practices.  *See Long v. Gaines*, 241 F. Supp. 2d 1 (D.D.C. 2002)("*Long II*").

3

December 12, 2000.  *See* Gaines Mem. at 4.  Because defendants did not "discover" plaintiff until December 2000, he was not among the prisoners evaluated for early release in November 2000. Plaintiff finally received a probable cause interview on December 19, 2000, and a formal parole revocation hearing on February 27, 2001 - 171 days after he was taken into custody.  The examiner recommended reparole above the guideline range, noting plaintiff's previous murder conviction, his probation violation only 13 months after release on a life sentence for a murder conviction, and his previous juvenile burglary convictions.  *See* Gaines Ex. R, Revocation Hearing Summary at 7-8.  On March 3, 2001, the Commission issued a Notice of Action in which it revoked plaintiff's parole and ordered him to serve 12 months. The release date was calculated as September 10, 2001--thus giving plaintiff credit for all time served since his September 11, 2000, arrest.  *See* Gaines Ex. S, Notice of Action.  On September 10, 2001, one year after his arrest, plaintiff was paroled to the Middle District of North Carolina, with a full term date of life.

   Plaintiff filed his Complaint while still incarcerated, arguing that defendants' failure to provide basic procedural safeguards (such as prompt preliminary and formal revocation hearings) violated "well-recognized and clear requirements" of due process.  *See* Amend. Compl. ¶¶ 22, 25.  According to

4

plaintiff, defendants' actions and omissions following his arrest caused plaintiff to miss his only chance to be considered for early release in November 2000 and led to "months of incarceration that he would not have suffered had Defendants not allowed Plaintiff to become 'lost' in the system."  See id. ¶ 28. Plaintiff also cites missed opportunities to attend training programs and educational sessions he allegedly would have enjoyed had he been incarcerated in North Carolina pending his preliminary interview.  Id. ¶¶ 29-30.  Plaintiff seeks damages in an amount to be proven at trial pursuant to 42 U.S.C. § 1983.

## III. ANALYSIS

### A.   Standard of Review

Pending before the Court are defendants' motions to dismiss plaintiff's complaint.  In appraising the sufficiency of a complaint, a court must follow "the accepted rule that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002)(stating that a court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations")(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  For purposes of a motion to dismiss, a court must treat

the plaintiff's factual allegations as true, *see e.g., Warth v. Seldin,* 422 U.S. 490, 501 (1975), and must liberally construe the complaint in favor of the plaintiff, *Jenkins v. McKeithen,* 395 U.S. 411, 421-422 (1969).

**B.   Discussion**

Not all interests are protected by the Due Process Clause's prohibition on governmental deprivation of an individual's life, liberty, or property without due process of law.  In order to determine whether a due process violation has occurred, the court must first inquire into the nature of the interest claimed to determine whether it is within the contemplation of the Constitution's "liberty or property" language.  *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  In order to have a protectible right, a person

> clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  In this case, plaintiff does not challenge the validity of his arrest or the punishment that was imposed, but rather alleges that defendants' acts and omissions after his arrest deprived him of the *opportunity to be considered* for discretionary early release in November 2000.  *See* Amend. Compl. ¶¶ 18-21; Gaines Opp'n at 9. In effect, Stewart is not challenging his parole *revocation*, but

6

rather is claiming that he had a constitutionally protected interest in being considered for *reparole*.

The Supreme Court has clearly distinguished between the respective liberty interests and process due in parole revocation and reparole proceedings. In *Morrissey*, the Court determined that the liberty of a parolee, although indeterminate, is valuable and is within the protection of the Fourteenth Amendment. *See* 408 U.S. at 482. Thus, the *revocation* of parole "calls for some orderly process, however informal." *Id.* On the other hand, there is no "constitutional or inherent right" in parole *release*. *See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7 (1979)(finding that "there is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a constitutional liberty that one desires").

Although there is no direct constitutional liberty interest in parole, "mandatory language in applicable state laws and regulations may suffice to create a liberty interest." *Blair-Bey v. Quick*, 151 F.3d 1036, 1047 (D.C. Cir. 1998)(citing *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983)). However, plaintiff does not contend that Commission policy (much less any state law or regulation) *mandated* the release of all parolees charged with "technical" violations, and indeed concedes that the November 2000 releases were discretionary. *See* Gaines Opp'n at 1

(plaintiff deprived of opportunity for early release that defendants "voluntarily" afforded others); Harrison Opp'n at 1 (plaintiff denied the opportunity for a one-time, early and "discretionary" release); *id.* at 6 ("Plaintiff is not alleging that he was *required* to be released from prison"). Defendants explain that the Commission not only retained discretion to deny release, but exercised it with the goal of preventing the release of individuals who, like plaintiff, had significant indications of violence in their criminal histories. *See* Gaines Mem. at 21. Accordingly, Stewart did not have a "legitimate claim of entitlement" to be considered for early release, and defendants' failure to consider him did not impair a constitutionally protected liberty interest in violation of due process.[2] *See Blair-Bey*, 151 F.3d at 1047-48 (finding that "discretionary" and "open-ended" guidelines listing factors for the D.C. Parole Board to consider in making set-off decisions "cannot be construed to give rise to a liberty interest"); *see also Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 647 (D.C. Cir. 1987) (rejecting plaintiff's claims that he had a constitutionally protected liberty interest in a reparole hearing).

---

[2] Nor can plaintiff show that he was denied equal protection by defendants' failure to consider him for early release, as he has not suggested that he was subjected to disparate treatment by virtue of intentional or purposeful discrimination. *See Anyanwutaku v. Moore*, 151 F.3d 1053, 1058 (D.C. Cir. 1998)*; Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 650 (D.C. Cir. 1987).

This case is troubling because defendants clearly did not provide plaintiff with a timely preliminary interview or revocation hearing. *See generally Long I*, 167 F. Supp. 2d at 87 (noting that "Lewis Stewart did not receive a preliminary interview until over 90 days after his arrest"). However, plaintiff has failed to identify how this delay has resulted in a continuing constitutional injury. Stewart was released from prison on the same day--September 10, 2001--as he would have been had he received prompt hearings. Without more, this timely release renders plaintiff's case moot. *See Spencer v. Kemna*, 523 U.S. 1, 14 (1998)("We are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong."); *Sutherland v. McCall*, 709 F.2d 730, 732-33 (D.C. Cir. 1983)(finding that 33-month delay between arrest and revocation hearing was not prejudicial where plaintiff was ultimately given full credit for the time served from the day of arrest); *see also Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998)(plaintiff "has nowhere explained what adverse impact he continues to suffer as a result of the Parole Board's alleged failure to give him a timely parole eligibility date, and we can think of none").[3]

---

[3] Plaintiff does raise vague allegations about lost opportunities to attend training programs at the North Carolina institution that could have qualified him for skilled employment upon his release. *See* Amend. Compl. ¶¶ 29-30. However, it does not appear that Stewart had a constitutionally protected

**IV.    CONCLUSION**

Although the administration of the District of Columbia's parole system in late 2000 is indeed troubling, defendants' conduct was the subject of a separate lawsuit (in which Stewart was a class plaintiff) and resulted in a comprehensive consent order entered by this Court.  *See Long II*, 241 F. Supp. 2d at 1.  For the reasons described above, Stewart has not alleged a continuing constitutional injury resulting from this conduct that would entitle him to additional damages here pursuant to 42 U.S.C. § 1983.

Accordingly, defendant Gaines and Harrison's respective motions to dismiss will be **GRANTED** in their entirety and the Clerk will be directed to **DISMISS** plaintiff's Complaint with prejudice.  A separate Order and Judgment accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **May 25, 2005**

---

"entitlement" to these programs that could lead to a compensable injury.  *See Sutherland*, 709 F.2d at 733 (eligibility for rehabilitative programs while in prison does not generally rise to the level of a constitutionally protected due process interest).  Moreover, to the extent that Stewart's interest "is no more substantial than the inmate's hope that he will not be transferred to another prison," that interest is not protected by due process.  *Greenholtz*, 442 U.S. at 11 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).